WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Jamie L. Commack, | No. CV-13-00985-PHX-GMS |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before this Court is the appeal of Plaintiff Jamie L. Commack which challenges the Social Security Administration's decision to deny benefits. (Doc. 21.) For the reasons set forth below, the Court affirms that decision.

## BACKGROUND

Commack applied for disability insurance benefits and supplemental security income in September 2008. (R. at 14.) Her claims were denied initially and upon reconsideration. (R. at 73–76.) She then appealed to an Administrative Law Judge ("ALJ"). (R. at 101–02.) The ALJ conducted a hearing on the matter on July 16, 2010. (R. at 38–72.)

In evaluating whether Commack was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] At step one, the ALJ determined that

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing

Commack had not engaged in substantial gainful activity since the alleged onset date. (R. at 16.) At step two, the ALJ determined that Commack had the following severe physical impairments: degenerative disc disease of the lumbar spine, a history of dislocation of the right shoulder, a history of degenerative joint disease of the bilateral knees, asthma, and obesity. (*Id.*) However, the ALJ found that Commack did not suffer from any severe mental impairments. (*Id.*) At step three, the ALJ determine that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (R. at 17.)

At that point, the ALJ made a determination of Commack's residual functional capacity ("RFC"),[2] concluding that she could perform a limited range of light exertion with various limitations including that she would need a sit/stand option. (*Id.*) At step four, the ALJ determined that Commack could perform her past relevant work as a

---

supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96–8p (July 2, 1996).

- 2 -

telemarketer and that there were also other jobs in significant numbers in the national economy that she could perform. (R. at 26–27.) At step five, the ALJ determined that Commack was not disabled. (R. at 28.)

The Appeals Council declined to review the decision. (R. at 2–7.)

Plaintiff filed the complaint underlying this action on May 13, 2013, seeking a review of benefits.[3] (Doc. 1.) The matter is now fully briefed. (Docs. 19, 22, 25.)

## I.   STANDARD OF REVIEW

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). The Court "may not reweigh the evidence, substitute our own judgment for the Secretary's, or give vent to feelings of compassion." *Winans v. Bowen*, 853 F.2d 643, 644–45 (9th Cir. 1987)

---

[3] Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

(internal citation omitted).

## II. ANALYSIS

Commack does not appeal based on the ALJ's determinations under the first three steps. She challenges the ALJ's determination of the work capacities and the evidence that the ALJ relied upon to reach it. Specifically, Commack argues that the ALJ erred by: (A) improperly discounting the assessment of her treating physicians, George Armendariz and Dieter Eckart; (B) rejecting Commack's symptom testimony; and (C) determining Commack's work capacities without substantial evidence in the record. The Court will address each argument in turn.

### A. The Assessments of Dr. George Armendariz and Dr. Dieter Eckart

Commack first argues that the ALJ improperly discounted the assessments by treating physicians George Armendariz and Dieter Eckart. "The medical opinion of a claimant's treating physician is entitled to special weight." *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (internal quotation marks and citation omitted). This is because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Andrews v. Shalala*, 53 F.3d 1035, 1040–41 (9th Cir. 1995).

The regulations impose a hierarchy for medical opinions offered by licensed physicians. The opinion of a treating physician is given more weight than non-treating and non-examining medical sources. *See* 20 C.F.R. § 404.1527; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When the treating doctor's opinion is uncontradicted, the ALJ can reject those conclusions only for "'clear and convincing' reasons." *Lester*, 81 F.3d at 830 (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). If another doctor counters the treating physician's opinion, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (internal quotation marks and citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).

Here, the ALJ thoroughly reviewed Commack's medical records and summarized her medical treatment history from the time of the alleged onset through the time of the hearing. (R. at 21–25.) Although Dr. George Armendariz and Dr. Dieter Eckart did offer restrictive views of Commack's ability to work and pain level, other treating physicians, such as Dr. Waldtrip, had contradictory opinions. The ALJ also noted that the restrictive assessment forms completed by George Armendariz and Dieter Eckart were unsupported by their own treatment and diagnostic history of the patient. The fact that Dr. Waldtrip described Commack's issues using adjectives like "mild," did not recommend surgery or further pain medication, and actually recommended that Commack start an active exercise program, all contradict the idea that Commack is medically limited from performing the limited range of light exertion on a job that the ALJ indicated in the RFC. (R. at 467–69.)

The opinions of George Armendariz and Dieter Eckart are countered here and therefore the ALJ needed to provide "specific and legitimate reasons supported by substantial evidence in the record." *Orn*, 495 F.3d at 632. Here, the ALJ met "this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *See Embrey*, 849 F.2d at 421. The ALJ reviewed all of the medical history and Commack has not alleged that anything was left out that should have been considered. The ALJ also laid out an interpretation of the conflicting clinic evidence and made findings. Commack disputes the findings and the weight assigned to the less restrictive assessments, but this Court "may not reweigh the evidence, substitute our own judgment for the Secretary's, or give vent to feelings of compassion." *Winans*, 853 F.2d at 644–45.

Because a reasonable mind could conclude on the basis of the evidence of record that Commack was not disabled, the Court finds that substantial evidence supports the ALJ's decision to discount the assessments of Dr. George Armendariz and Dr. Dieter

Eckart. *See Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995).

**B.     Symptom Testimony**

Commack next contends that the ALJ improperly rejected her symptom testimony. The ALJ must engage in a two-step analysis in determining whether a claimant's testimony is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). The ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If the claimant has, and the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain. *Bunnell*, 947 F.2d at 345–46 (internal quotation marks and citation omitted).

Here, at the first step, the ALJ concluded that Commack's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (R. at 19.) At the second step, the ALJ concluded that Commack's "statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely credible." (*Id.*) After reviewing the contradictory medical history, the ALJ also found that "the claimant's reliability is highly suspect based on inconsistent statements and a diagnosis of malingering." (R. at 26.) This conclusion was in part based on an examination by John Prieve, in which he noted that Commack gave a "mostly very poor effort." (R. at 290.) The government admits that John Prieve had a suspended medical

license at the time he examined Commack, but argues that the ALJ did not rely on Prieve's medical diagnosis, and only considered the examination for purposes of establishing malingering. (Doc. 22 at n.9.) Commack agrees that the ALJ did not rely on Prieve's opinion in determining work capacities. (Doc. 19 at 10.) The ALJ also noted that the intensity of the pain and debilitating effect described was contradicted by Dr. Waldtrip. As discussed above, Dr. Waldtrip did not recommend surgery or continued pain medication and actually recommended that Commack begin exercising.

Accordingly, the ALJ did not err in finding that not all of the symptom testimony was credible. The ALJ identified evidence of malingering and discussed specific ways in which the medical record contradicts Commack's symptom testimony.

### C.   Work Capacities and Residual Functional Capacity

Finally, Commack argues that the ALJ's determination of work capacities was unsupported by substantial evidence in the record. Commack's primary argument is that the ALJ did not specifically identify the source of each of the limitations and capacities spelled out in the RFC. In terms of specific objections, Commack questions the RFC finding that she could lift ten to twenty pounds occasionally and would need a sit/stand option throughout an eight-hour workday. (Doc. 19 at 29.) Commack then contrasts those findings with those of Dr. Prieve and the initial state agency reviewer. (*Id.*) Both of those individuals found that Commack could lift no more than ten pounds. An RFC finding that Commack can lift ten to twenty pounds is not inconsistent with the assessments which say she can lift ten pounds. Although the RFC gives a higher possible upper limit of twenty pounds, Commack does not appear to dispute that she could lift the ten pounds at the bottom of the range. In fact, Commack testified she could lift five to ten pounds with either hand alone. (R. at 51.) It was reasonable for the ALJ to find that she might be able to lift somewhat more with both hands together.

Commack also questions the sit/stand option and eight-hour work day. However the only contradictory assessment that Commack points to is that of Dr. Prieve, who had a suspended medical license. The state agency reviewer did mention a sit/stand option

and an eight-hour work day.

Commack also seems to question why the RFC said she should never stoop when Dr. Prieve, who again did not have an active medical license, said that she could occasionally stoop. (Doc. 19 at 29.) The ALJ noted earlier that "the functional limitations adopted herein generously consider the claimant's weight and its effect on the claimant's ability to ambulate as well as the claimant's other body systems." (*Id.* at 17.) Even if the Court were to determine that the ALJ was mistaken and that the RFC should have allowed occasionally stooping, that would be a harmless error as it would not affect the determination that Commack was not sufficiently disabled to qualify for benefits. There is no reason that a less restrictive RFC would have led to a conclusion that Commack could not perform at least the same jobs if not more jobs.

Beyond these specific objections, Commack's primary complaint is that the ALJ did not adequately explain its RFC or draw enough connections between the medical history that was presented and the specific limitations of the RFC. However, there is enough in the opinion to show that the ALJ considered all of the record and came up with an RFC based on the ALJ's findings. The Court finds that the RFC is based on substantial evidence in the record, even if the ALJ could have done a better job of explaining the conclusions reached.

### D. Discretionary Remand

Commack's request for remand is predicated on this Court finding reversible error. None has been found, and the request for remand is therefore moot.

**IT IS HEREBY ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to **TERMINATE** this action.

Dated this 14th day of February, 2014.

/G. Murray Snow
United States District Judge